# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7471 | **DATE** | 3/6/2001 |
| **CASE TITLE** | DUPAGE HABITAT FOR HUMANITY vs. VILLAGE OF GLENDALE HEIGHTS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Status hearing held and continued to Mach 21, 2001 at 9:30 a.m. Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | MAR 07 2001 date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | | date mailed notice |
| | Date/time received in central Clerk's Office | | mailing deputy initials |

Document Number: 68

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUPAGE HABITAT FOR HUMANITY, INC., )
an Illinois not-for-profit corporation, )
 )
Plaintiff, )
 )
 ) No. 98 C 7471
v. )
 DOCKETED )
 MAR 0 7 2001 )
VILLAGE OF GLENDALE HEIGHTS, )
an Illinois municipal corporation; et al., ) Judge John W. Darrah
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, DuPage Habitat for Humanity, commenced an action against defendant, the Village of Glendale Heights (Village), for an alleged violation of equal protection pursuant to 42 U.S.C. § 1983. Plaintiff alleges that conduct by the Village deprived plaintiff, on behalf of the class of individuals as proposed home buyers, of their Fourteenth Amendment right to equal protection of laws. Before this Court is the Village's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial.

68

*Miller*, 203 F.3d at 1003.

In June of 1996, plaintiff purchased 20 vacant subdivided residential lots located within the Village of Glendale Heights. Plaintiff specifically purchased these lots to build homes for families that would qualify as low income. (Def.'s 56.1(a)(3) Statement ¶ 4). Subsequent to the purchase of the lots, plaintiff sought funding for the project through the Illinois Housing and Development Authority (IHDA). (Id., at ¶ 5). On July 26, 1996, the Village, through a correspondence by President Fajardo, notified residents of plaintiff's intent to build homes for low income families, and invited the public to participate in any discussion regarding plaintiff's development at the Village Committee of the Whole meeting, to be held on August 1, 1996. (Id., at ¶ 6). On September 20, 1996, the Village recorded liens on the lots for alleged violation of the Village Code. (Stipulation of Uncontested Facts ¶ 11).

On September 17, 1996, the Village was notified of plaintiff's application for funding through IHDA. The notification invited the Village to submit any concerns regarding the proposed project. (Def.'s 56.1(a)(3) Statement ¶ 8). On October 3, 1996, the Village formally objected to the funding application made by plaintiff to IHDA by passing Resolution 96-R-42. (Id., at ¶ 9). The formal objection was served to IHDA on October 4, 1996. (Id., at ¶ 10). On October 10, 1996, the Village sent notice that it was attempting to re-zone the 20 lots owned by plaintiff. (Stipulation of Uncontested Facts ¶ 13). On October 14, 1996, plaintiff served a letter to IHDA in response to the Village's objection. (Def.'s 56.1(a)(3) Statement ¶ 11).

On November 15, 1996, Mr. Nogaj, President of DuPage Habitat for Humanity, attended a meeting of the Members of the Board of the IHDA and represented that plaintiff had not reached an agreement with the Village. At the meeting, the IHDA approved plaintiff's proposed project,

2

conditional upon plaintiff and the Village entering into an option agreement granting the Village an option to purchase the remaining 16 lots of the 20 lots originally purchased by plaintiff, following the improvement of the first 4 lots. (Def.'s 56.1(a)(3) Statement ¶ 12). On February 6, 1997, plaintiff entered into a Right of First Refusal and Option Agreement (Option Agreement) with the Village irrevocably granting the Village the option to purchase option lots at any time during the duration of the option -- any time after June 1, 1998 and prior to December 31, 1998. (Id., at ¶¶ 13-14). Pursuant to the Option Agreement, building permits were issued for four lots, and plaintiff built homes on those four lots. (Plaint.'s Additional Facts ¶ 21).

In 1998, plaintiff sold 7 of the 20 lots, thereby leaving 9 lots subject to the right of first refusal. (Plaint.'s Additional Facts ¶ 22). On September 1, 1998, plaintiff submitted applications for building permits for four lots that were subject the right of first refusal. (Id., at ¶ 23). By letter dated October 15, 1998, the Village informed plaintiff that it was exercising its rights under the Option Agreement to purchase the remaining nine lots. (Id., at ¶ 24). On November 20, 1998, plaintiff filed the present complaint against the Village, members of the Village's Board of Directors, and the Director of the Community Development of the Village. (Def.'s 56.1(a)(3) Statement ¶ 16).

Defendant argues that the grounds for plaintiff's claim are barred by the statute of limitations. Section 1983 claims that arise in Illinois are governed by a two-year statute of limitations. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). The limitations period begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later. *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994).

3

Here, the Village engaged in conduct that prevented plaintiff from building homes on property it owned. The obstacles put in place by the Village were removed by the Option Agreement. The Option Agreement required that the Village withdraw its objection before IHDA and allow the immediate construction of housing on the four lots plaintiff wished to build on. The Option Agreement also provided for the Village to release the lien on the lots in question. Once the Option Agreement was signed, plaintiff was free to build on the lots it sought to build upon. At this point in time, plaintiff had not suffered an injury because plaintiff was still able to proceed with the original plan to develop the lots. It was not until plaintiff sought to build on an additional four lots that the Village decided to execute its rights under the Option Agreement. It was at this time the plaintiff was prevented from improving its property as originally intended and suffered an injury to his right as a result of this action of the Village. Plaintiff's complaint seeks a declaration that the Option Agreement, which gave the Village the right to purchase plaintiff's property, which has the effect of preventing plaintiff from building on said property, is unconstitutional. Until the time that the Village exercised its right to purchase the property, the plaintiff was not injured because plaintiff could build homes on the property. If the Village had not exercised its option under the allegedly unconstitutional Option Agreement, plaintiff's right to be treated equally under the laws and the alleged violation of such right would not have been called into question. For this reason, the statute of limitations began on the date of the alleged unconstitutional Option Agreement. Therefore, plaintiff's suit was filed within the applicable statute of limitations.

The Village also argues that summary judgment should be granted because the plaintiff waived its right to file the present action by entering into the Option Agreement. A constitutional right may be contractually waived. However, the contractual waiver of a constitutional right must

4

be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be enforceable. *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 187 (1972).

The Option Agreement in the present case did not contain a waiver of the right to sue or a release of claims clause. The Option Agreement did contain a severability clause concerning the event that any term or provision of the agreement was found by a court to be invalid or enforceable. The lack of any waiver or right to sue clause and the inclusion of a severability clause concerning legal action demonstrates that the Option Agreement did not include a waiver of plaintiff's right to file suit. In any case, the issue of an alleged waiver presents a significant and material question of fact.

For the foregoing reasons, the Village's Motion for Summary Judgment is denied.

Dated: March 6, 2001

JOHN W. DARRAH
United States District Judge